Good morning. May it please the panel, my name is Craig Mielke on behalf of the Petitioner, Officer Ishmael Diaz. When I was preparing for argument today, I pulled out my brief and I noticed I did not attach an appendix to it, so I want to apologize to the panel for not having an appendix. I want to thank Respondent's Counsel for putting a proper appendix on his brief. So everything is in your briefs there, but it's attached to the appellee's brief, the Notice of Appeal, the decision of the arbitrator, and the decision on review. And again, I have no excuse that it happened. It is our position that we accept the facts as found by the Commission. We do not believe this is a manifest weight case. Let me give a very brief summary of the facts. Officer Diaz, 28 years old at the time, three years with the Montgomery Police Department. He was responding to what appeared to be a routine domestic call. That was under control. That suspect offender was in custody. In leaving the scene, a neighbor becomes upset that a squad car is blocking his driveway. That neighbor retreats to his house and comes out with what appears to be a gun. At this point, I'd like to just read a paragraph from the Commission decision, because again, we don't dispute the facts as found by the Commission. Petitioner testified that after seeing what appeared to be a handgun, he drew his weapon and commanded the subject to drop the gun. The subject did not comply and continued to walk toward Petitioner and Petitioner's backup officer. Petitioner testified further as follows. When he got approximately, I want to say about 15 feet away from where I had taken cover behind an SUV, I saw that it had an orange tip. Petitioner stated that the orange tip indicated to him that the gun was not a real gun, that it was possibly a BB gun or some type of toy gun. Petitioner also stated he continued to command the subject to drop the gun and that he did not want to take any chances and continued to stay behind cover. The question now is, under the Pathfinder decision from the Illinois Supreme Court, is that sufficient to have what we call a mental mental psychiatric disability case? There is no physical injury to Officer Diaz, so it is a mental mental type of claim. Now, General Motors, Mr. Milkey, interpreting the Pathfinder and whether or not the Commissioner took it out of context, the phrases use an uncommon, non-traumatic work-related experience out of proportion to the incidence of normal employment activity. Correct. So I think the theory of mental mental basically is you can have a severe emotional shock, but it must arise from a situation, what they call a greater dimensions in a day-to-day emotional strain and tension, which, quote-unquote, all employees must experience. So recognizing the intuitive appeal of your argument, I guess my specific question is, do we look at this in the context in interpreting which employees must experience the police officer context or just general context? Because the argument could be made, as I think the Commission found, and whether or not they went astray is a question, that this is something that a police officer normally is expected to encounter and is trained to deal with unruly, armed and dangerous suspects. So why is this out of the normal experience of a police officer, or does it have to be? First, I don't think it has to be, because let's take, if this isn't a police officer, let's say this is a village of Montgomery streets and sanitation worker who's out there picking up leaves during the fall leaf cleanup, and a deranged citizen comes out with a gun threatening that guy picking up the leaves. I think that clearly would be enough. No, but that probably doesn't even arise out of in the course of his employment, because that is the random criminal act. Right. Okay? And I can see that defense of that. But it would be shocking to a regular sanitation worker. Well, I think it would be too. But a police officer, yes, it is common for him to face criminals, but that's part of his job, and that's why it arises out of. Our office represents over 1,000 police officers with the Aurora Police Union, the Rockford Police Union, Elgin Police Union, Kane County Sheriff's deputies, and a few smaller ones. It is, frankly, uncommon for a police officer to have to draw his service revolver and draw down on a suspect. I mean, that does not happen every day. I would dare say probably the majority of police officers never unholster their service weapon, and that is part of the shock of this whole thing. I mean, as an example, if I was going to say a deranged client, but let's say a deranged insurance adjuster comes running in this courtroom with, we don't know, a BB gun. I mean, I'm hiding under the table. I don't know what you're going to do up there, but it's probably something to seek cover. If there's a police officer in this courtroom, he's not allowed to do that. He's expected to pull out his service weapon, stand down this deranged person, and say, drop your gun. And that is part of the shock of being a police officer. He is a trained killer. Police officers are trained killers. They're the only people in society, I suppose with the military, but they're not supposed to be involved in civilian society, that we give a gun to and sanction deadly force. There was just about two years ago an incident similar to this where a domestic offender has a BB gun. Not known to the police officers as a BB gun. The city of Aurora shot and killed a man with a BB gun. Okay? There was an instance in Rockford this year. A man had a gun, a real gun, but no bullets in it, would not put his gun down. Multiple officers were called to the scene, and they finally shot and killed the guy. We call that suicide by cop. That is not, unfortunately, an uncommon phenomenon. So this is not a situation where... I'm getting all confused now. Okay. I mean, that's why we have police officers, is to shoot people. I agree. Okay. So what's so shocking about this experience he's having right now? You said it's not uncommon. You just said at first, you said it's rare. Now you say it's not uncommon. Oh, the suicide by cop? Yeah, I mean, that happens. There's probably a couple of those every year in the state of Illinois, where some citizen... Oh, no, there's 50,000... I don't know. You just said suicide by cop. I'm going to guess 50,000 police officers in the state of Illinois. Well, then, suicide by cop is not common. But I'm suggesting that most officers never have to unholster their service revolver in their entire career. But even if they do, even if it's common for that officer, I mean, the law here is Pathfinder, and then, as interpreted by General Motors, an appellate decision. But Pathfinder talks about the reaction of a person of normal sensibilities. So Pathfinder, from the Supreme Court, really does kind of define what I would call a reasonable man standard, that we don't say there's a unique standard based on that individual's occupation. Really, what General Motors stands for, and what General Motors has been cited in numerous cases that we all have in our brief, is the idea that verbal abuse is not going to be found to be compensable under a mental-mental. I mean, General Motors does not speak to someone pointing guns at anybody. General Motors is a verbal abuse case, and General Motors stands for the general proposition that the normal stress and strain of employment is never going to be found to be a mental-mental decision. And so is this the normal stress and strain of a police officer? No, it is most definitely not. It is most definitely not. Why not? I mean, isn't that what they're trained for? To be honest with you, no. They are not trained for the emotional situation that happens with this. I mean, I have personally handled many duty disability pensions where officers have been disabled for the rest of their career arising out of, typically, there's an actual shooting. But here, though, Your Honor, we don't have to worry about, did this officer suffer post-traumatic stress disorder from this incident? I mean, again, I accept all the facts, and there's no dispute. As a matter of fact, the department, their own fitness for duty examination process, agreed that this officer had post-traumatic stress disorder. And it's undisputed that it arose out of this incident? Absolutely undisputed. And there's just no issue about that, no contrary evidence, right? That's correct. He was off, I think, for a couple of months. And even at the time of arbitration, he was still taking psychotropic medication back at work, but still taking psychotropic medication. So I think we have really put our finger on the issue here. And I'm going to read again from the commission decision. We acknowledge that the petitioner's encounter with the subject in May 29, 2007 presented a dangerous and precarious situation. But then we find, however, that it is not uncommon for what he was otherwise subjected to in the normal course of his employment. So I think the commission did create this special standard for first responders. And I don't think there's anything in the Workers' Compensation Act or in Pathfinder that is going to create or allow the commission to create a special standard that says if you're a first responder, it could be a fireman, paramedic, police officer. You could never recover from anything that happens on the job, no matter how bizarre. Right. Because you're supposed to be able to deal with blood and guts and horrible situations. You know, there are other ones that were compensable. I think they're all commission decisions cited by both parties. But, you know, there are situations. There was one with a 9-11 operator. I mean, she wasn't in the zone of danger or anything like that. But it was some horrible situation. She's taking a phone call and there is, I think it might have been a rape or something horrible happening while she's listening. And she had post-traumatic stress disorder. But, I mean, if we're going to say post-traumatic stress disorder is compensable, and clearly it is, does it make a difference if the gun is fired? I mean, here Officer Diaz did not pull the trigger. He could have. Well, it could make a difference as to whether it's considered sudden and severe and immediate. And that is a standard in General Motors. I agree. That's Pathfinder. I agree that the Pathfinder standard is sudden severe emotional shock traceable to a definite time and place that causes psychiatric injury. Well, even Pathfinder was expanded by General Motors, the case you cite, by including the language immediately, immediate disability. Because that didn't appear in Pathfinder and it does appear in General Motors. That's correct, isn't it? That is what General Motors says. Well, in fact, one commissioner cited that. Sure. But General Motors is not a question of did this incident take a second? I mean, in Pathfinder, an employee observes a cold employee get their hand chopped off in a punch press, I believe. I mean, that happens like that. Right. And then I think the petitioner fainted, as I recall. Correct. But, you know, in General Motors, it was a situation of an abusive workplace that occurred over months. And then the person had a nervous breakdown. Okay? So I don't think you can take the word immediate from General Motors, where they're dealing with really almost a repetitive trauma situation. I think General Motors stands for two propositions, and appropriately so. We are not going to allow a repetitive trauma psychiatric injury, and you have to have something more than just a general abusive, verbally hostile workplace. Right. Because they say in the case itself, quote, unquote, if they allowed recovery because of general worry or pressure and overwork, it would open the, quote, unquote, floodgates for workers who succumb to the everyday pressures of the job. And that's not the situation here, because you're pointing to a specific instance in time and place. Correct. And he had, you know, symptoms that evening. Well, first, he's there until 11 o'clock. I mean, the standoff. And, you know, I don't know that this is all that important, but I don't understand how this police department or this respondent can say, well, Ishmael Diaz, he overreacted to the situation by suffering post-traumatic stress disorder, when the same police department treated the situation incredibly seriously. I mean, you know, this is not the family sitting around Christmas dinner, and little Johnny pulls out his brand-new BB gun and accidentally points it at Grandma, and Grandma is startled for an instant. Oh, you pointed a gun at me, but we all know it's a little BB gun. Okay? This is a situation literally of life and death that was treated as a life-and-death situation. I think it was the chief or deputy chief testified that they deemed this offender armed and dangerous until it was eight hours later that they got him out of the house that he barricaded himself in. They had to throw, I think it was tear gas in there. They emptied the homes in the immediate vicinity. They had a small army there. Which was Montgomery called in the city of Aurora SWAT team, and I think there were 40-plus officers there. So, I mean, this was treated, and rightfully so, as a very serious situation. Well, and the police department also treated his post-traumatic stress disorder seriously and had a hearing and deemed him unfit to return to work because of it. Absolutely. Absolutely. So, you know, if you don't have an agreed post-traumatic stress situation, maybe this is different. Do you believe that General Motors, the standard articulated in General Motors is consistent with the standard articulated by the Supreme Court? Well, I don't think General Motors, the result in General Motors is certainly not inconsistent with Pathfinder. I think if you take... That's not what I asked you. Did you take the words out of context in General Motors? I said, do you believe that the proposition articulated in General Motors is consistent with the standard? Can I ask what particular proposition is the Court... That the precipitating event must be one which the employee would otherwise be subjected to the normal course of his employment. So it's being judged based upon the normal employee in employment when, in fact, in Bagot, the Supreme Court said the work-related list, the injury occurred because of a work-related list or because the employee placed the claimant at risk of exposure exceeding that of the general public. So do we judge this based on the general public or do we judge this based upon a reasonable policeman? I think it's a person of normal sensibilities, which, yes, it would be the general public. So, in other words, to that extent, General Motors is inconsistent with the Supreme Court. I don't think you have to read General Motors that way. I think if you... Well, I'll read you the quote. The Supreme Court's decision in Pathfinder is limited to the narrow group of cases in which an employee suffers a sudden, severe emotional shock which is precipitated by an uncommon event of significantly greater proportion or dimension than that to which the employee would otherwise be subjected in the normal course of his employment. I agree that's an important quote. I've got it written out here verbatim myself. And I think the question is, in General Motors, when they were saying that he would be subjected to, in the normal course of his employment, General Motors was not really talking about that individual and the environment in that factory. They were talking in the more general sense of general employment and the stress and the verbal... I mean, there's a reason we get paid to go to work. It's not necessarily going to be fun. There's going to be a certain amount of stress and strain involved, and that's what you get paid for to show up at work. When you go beyond that and you suffer post-traumatic stress disorder, I think then per the Supreme Court, and this is not contradicted by General Motors, then it's a person of normal sensibilities. And I don't think we take our first responders and make them some kind of knights in shining armor that are supposed to be mentally hardened because that's really not part of their training. I wish it were. I wish these officers somehow were given that kind of training. They're told how to physically disarm an offender. Counsel, your time is up. You'll have time to reply. Thank you very much. Thank you. Counsel. Thank you, Your Honors. Brett Isley for the Village of Montgomery, the appellee. First, I would like to respond to Justice's question about accident. We did put that in dispute. We did not believe that it arose out of and in the course of his employment. Now, ultimately, this became a mental-mental question. And we – and the other thing about bringing the case here is we believe the standard should be manifest weight rather than de novo. We just simply apply the General Motors law to these facts. Why, are there facts in dispute here? No. There are no facts in dispute, but we just apply the law to the facts. And the point that was made by the circuit court was that this was not a sudden, severe emotional shock resulting in immediately apparent psychic injury. It took several days before he finally realized at his roll call that he was dizzy and something was wrong. We're going to get hung up on how we define immediate, but I think the threshold question we've been dancing around here is, and this is what we'd like you to answer, do you need to consider the traumatic event and the effects within the context of the normal activity of the person who is filing the claim? In other words, a fireman, can he recover in the course of something that happens in a fire when his basic training is to deal with fire suppression and going to the scene of a fire? Same thing with a police officer. Are they ever going to be able to recover because, you know, theoretically they're dealing with something that the average citizen doesn't deal with? So do we look at it from the perspective of the person in the occupation, or is it something regarding the general sensibilities of the average person? What is it? I think you have to look at the person and his job. We all have our own jobs. We all have our own duties. Let's put it in a different way. That's the question. That's what the commission did. That's why they decided the case the way they did. That's right. I mean, they specifically said this was not an uncommon event for him as a police officer. That's right. So basically a police officer can never run into an event that would be so uncommon. Oh, no, I disagree. Let's take a road trooper. Let's take a state trooper. What they do a lot of times is they have to go to accident scenes, you know, and they see a lot of horrific things, a lot of dead people and maybe babies in several pieces or whatever. So if a road trooper has a mental breakdown because of that under this standard, he couldn't recover, could he? Because that's what they do every day. I keep looking back to the General Motors narrowed pathfinder rule, which is it's got to be a sudden severe shock first, and it has to be precipitated. What's that? What were the facts in General Motors? The facts in General Motors was the subordinate being yelled at by a superior. He was being called dirty names. Right. Brought into his office, he kicked some furniture around, yelled at the subordinate. It was a shock to him. I think during the oral argument, Justice Calvo said not recoverable even in the Fifth District. You might want to look at what the attorneys were on General Motors. Well, let's put it a different way with the unholstering of the gun. Every time a police officer unholsters his gun, it's an accident. Whatever injury he suffers is automatically connected to that unholstering. If we say it's so uncommon for him to pull his gun and that none of us have to do it but that he does it, once he does it, that's automatically an injury. I mean, that's what we're turning this upside down. He has to suffer some kind of mental problem, though. I mean, I hear there really isn't any dispute that this gentleman had post-traumatic stress disorder, is there? I mean, there wasn't any contrary medical evidence or anything like that. No, but he told us in his testimony that he saw there was an orange tip on the gun. He was behind an SUV. There was no gunfire. There was no physical assault. He knew right away that there was not a sudden shock. That's how I interpret that. Didn't he say, though, he wasn't sure? He wasn't sure, but he's behind an SUV. The standoff goes on for hours. It goes on until he's gone and doesn't complete until he's left. I mean, these facts are a little different than the sudden shock of being shot upon and shooting back. I mean, I have a question here. Is the trauma, the fear of, or the shock of being shot upon or, let's be frank, most of us don't have the opportunity or the desire to inflict deadly force on other people. Is that not also traumatic, that you have duty and that you're actually going to perhaps kill someone? But I think that's part of his training. I mean, I think that's part of it. Just as I have training to come up and argue and the general person doesn't, I don't know exactly what mental injury I would suffer here, but he has the training. So what we're saying is that if this man actually suffered post-traumatic stress disorder as a result of this incident, then, you know, he's just not tough enough to be a police officer is what it boils down to. General Motors. Because a police officer in this situation, this kind of thing shouldn't happen. That's what we're saying. Well, let me ask you this. Well, I'm saying that General Motors should be applied to these facts. But General Motors is nothing more than an articulation by the appellate court that said, one person calling another person dirty names is never, does never rise to the level of severe emotional strain. Period. That's what General Motors says. That's all it's about. No, no. They said that, remember, the respondent in General Motors argued that this case, they cited, Board of Education versus Industrial Commission, stands for the proposition that the use of obscene and racist language by a superior to a subordinate, even in shouting tones, does not constitute a severe emotional shock as a matter of law. We disagree. So sometimes it could, is the way I read it. Sometimes it could, in a shouting match, become an emotional shock. Well, that's a part of, people argue every day, not every day, but frequently at the workplace. Let me ask you this. Under your argument, would a firefighter who rescued people from the Twin Towers in 9-11 and subsequently developed post-traumatic stress syndrome, under your analysis he could not recover because firefighters are trained to rescue people from burning buildings? We're talking about September 11th where he's climbing up the Twin Towers. I would say that's an uncommon event. That's certainly an uncommon event. How common do you think it is for a policeman to have a gun pointed at him? Do you think that's real common? I don't think it's common. But there's still the emotional shock. Bagot says because the employment placed the claimant at risk of exposure exceeding that of the general public. So it's not judged based upon how a policeman would react to having a gun pointed at him. It's judged by how the general public would react by having a gun pointed at them. Now, some policemen are not going to suffer any severe emotional problems because a gun is pointed at them. Others are. So the question becomes does his employment as a policeman place him at risk exceeding that of the general public? Well, the general public certainly doesn't have guns pointed at them on a regular basis, do they? No. Unless they're in Chicago. Well, that could be. But there's an and in between. The way I read Pathfinder and the way it's written is that there's an and. There has to be two things. First, a sudden severe emotional shock resulting in immediately apparent psychic injury. That's the first. And then it says and is precipitated by an uncommon event of significantly greater proportion or dimension than that which the employee would otherwise be subjected to in the normal course of employment. That's not Pathfinder. Now you've switched over your degree from General Motors. I'm sorry. General Motors. That's General Motors. Right. Now, was that necessary to decide the Pathfinder case, to decide you view it subjectively by the type of employment? To decide the Pathfinder case? I'm sorry. I'm sorry. General Motors. To decide the General Motors case? Right. Right. Is it dicta, really? Oh, I don't think that's dicta. I think that's the rule of General Motors personally. I mean, I think that's what makes it narrow. That's what narrows the Pathfinder. What is the rule? What are you referring to? Those two things that we conclude as they put in their decision. We conclude the Supreme Court's decision in Pathfinder is limited to the narrow group of cases in which an employee suffers, first, a sudden severe emotional shock which results in immediately apparent psychic injury and is precipitated by an uncommon event of significantly greater proportion or dimension. Interestingly enough, Pathfinder never uses the word sudden. Pathfinder merely says suffers a severe emotional shock traceable to a definite time, place, and cause which causes psychological injury or harm, injury or harm, suffers an accident within the meaning of the act. Where is the sudden? Well, they say sudden twice in General Motors. No, no. I didn't say General Motors. I said Pathfinder. Oh. Pathfinder ever use the word sudden? I don't recall that it does. It does not. And what you've got here, I think, is our court in General Motors going too far, going much further than Pathfinder ever went and certainly not where Bagot went. And so maybe we ought to rein in General Motors. Well, that becomes the question. You have a logical point. You seem to be suggesting that the stress, the effect must be immediate upon the recipient, in this case the police officer. But really, is that what the case law says? Because it may just turn on that issue. Because according to you then, you pointed out, okay, it wasn't immediate. It was a couple of days later. It wasn't like he went to the hospital or doctor the next day. But under the case law, does he have to go immediately for treatment? That really is the question, isn't it? Well, I guess, yes. I mean, that's part of the General Motors lens that we're looking through. Is it immediate? Well, we're not looking through the General Motors lens. We're looking through the Pathfinder lens. And we're looking through the Bagot lens. Because that's the Supreme Court. Perhaps General Motors just misinterpreted Pathfinder. Went a little bit too far. My concern, though, is every time you have a police officer unholstering his gun, something bad has probably happened already. And so you're just going to have an automatic injury. In other words, the accident's already occurred when he pulls his gun. No, they've got to prove that he suffered some type of mental injury, post-traumatic stress disorder, whatever. And there has to be proof of an actual. . . Right. Assuming he has that, then if you back up, you already have that. . . If he's in that kind of a situation, then why hasn't he had an accident that arose out of it in the course of his employment? Well, it's because it's a mental, mental case. It's a little different than. . . Counsel, is the determination of what is a sudden, severe emotional shock a question of law, or is it a question of fact? Because the cases that I read, sometimes they say it's a matter of law, and sometimes they apply manifest way. I can't quite figure out which it's supposed to be. I'm not sure if I have an answer for you on that. Bagot says where a claimant must prove certain elements to establish a compensable claim is purely a question of law and is therefore reviewed to no vote. That's the Supreme Court. That's all I have for you. I just, I feel that this is a matter of applying General Motors to the facts if you feel. . . We have to revisit the law, the state of the law. Okay. All right, thank you. Thank you. Counsel, you may reply. How do I review the brief, Your Honor? I quote from General Motors at page 12 of my brief, and I think this is the real holding of General Motors. Quote, anxiety, emotional stress, or depression which develops over time in the normal course of an employment relationship does not constitute a compensable injury within the holding of Pathfinder. That's all that General Motors stands for. We don't have to overturn it to prevail, for my client to prevail in this case. I heard the questions about, you know, was it immediate, sudden, severe? The Commission didn't decide that issue. They didn't say that I didn't prove a Pathfinder element of sudden, severe, or immediate. They held my police officer to a different standard because he was a police officer. If I may, and hopefully this doesn't sound too corny here, I'm going to quote from Gordon Lightfoot in the wreck of the Edmund Fitzgerald, okay? So bear with me. I like that. As you remember, that was actually, the wreck only happened in the early 70s, but it was a Lake Freighter in Lake Superior, I think they found later was 40, 50-foot waves crashed the boat apart. But the line that I love is, does anyone know where the love of God goes when the waves turn minutes to hours? And that's the whole thing. When some stressful situation turns minutes to hours for this police officer, seconds to minutes to hours, that's really what the stress is all about, and that's why there's this impact. Time slows down, whether you're on a Lake Freighter in a doomed ship in a storm. I mean, I don't know if those guys had a minute, 30 seconds, or whatever, when they knew they were going down. But this officer, in these couple of seconds, somebody draws down on you, put your gun down, put your gun down. I pull my gun out. I guarantee you, this officer, Diaz, can relive those seconds and tell you about them as though they were hours of his life. And that's the unique emotional shock that this officer suffered. I think it is uncommon for a police officer, but it certainly satisfies Pathfinder and is totally consistent with General Motors. Thank you. Thank you, Counsel. Court will stand in recess until 1.30 this afternoon.